UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Drywall Supply Central, Inc.,

       Plaintiff,

v.                                       Civ. No. 07-1772 (JNE/JJG)
                                           ORDER

Trex Company, Inc.,

       Defendant.

---

Douglas R. Boettge, Esq., and Elizabeth C. Kramer, Esq., Leonard, Street and Deinard, PA, and Michael J. Auger, Esq., Drywall Supply Central, Inc., appeared for Plaintiff Drywall Supply Central, Inc.

Teresa J. Kimker, Esq., Halleland Lewis Nilan & Johnson PA, appeared for Defendant Trex Company, Inc.

---

     This is a diversity action brought by Drywall Supply Central, Inc., against Trex Company, Inc. Drywall made several purchases of decking materials from Trex. Trex subsequently terminated the parties' business relationship. After Trex allegedly withheld return credits and failed to repurchase inventory from Drywall, Drywall brought this action for civil theft, conversion, unjust enrichment, breach of contract, breach of implied duty of good faith and fair dealing, and a declaratory judgment that Trex has a legal obligation to buy back the remainder of the Trex goods and materials in Drywall's possession. Trex counterclaimed for a declaratory judgment that Trex has no legal obligation to repurchase Drywall's Trex inventory. The case is before the Court on Trex's motion for partial summary judgment. For the reasons stated below, Trex's motion is granted in part and denied in part as moot.

# I.    BACKGROUND

Trex manufactures composite decking, railing, and fencing products.  Trex and Westmont Building Products entered into a distributor agreement in 2002.  In 2005, Drywall bought Westmont Building Products pursuant to the terms of an asset purchase agreement.  Under the agreement, Drywall bought Westmont's Trex inventory and agreed to pay Trex according to the terms of the agreements executed by Westmont and Trex.  Following the asset purchase, Drywall purchased additional materials from Trex to distribute and sell to its business customers.  To purchase these materials, Drywall sent purchase orders to Trex.  Trex shipped the requested materials to Drywall along with an invoice for payment.  Drywall then sent payment as directed in the invoice.  More than once, Drywall returned purchased materials to Trex.  Trex accepted the returned materials and issued credit invoices to Drywall.

On October 5, 2006, Trex notified Drywall that it was terminating its business relationship with Drywall effective November 4, 2006.  At the time of the termination, Drywall's outstanding credit invoices totaled approximately $282,000.  Additionally, Drywall possessed approximately $2 million worth of Trex goods and materials in its inventory.  Drywall has since sold approximately $1 million of its Trex inventory to its customers and to distributors, and still has the remainder of the Trex inventory in its possession.  Trex has declined to buy back the remaining Trex inventory from Drywall.

# II.    DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court

of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.      Statute of frauds

Trex contends the statute of frauds bars Drywall's claims that Trex is obligated to repurchase Drywall's existing Trex inventory because there is no written agreement requiring Trex to do so following termination of the parties' business relationship.  Drywall responds by arguing that the written purchase orders, invoices, and credit invoices associated with Drywall's purchases of Trex materials are writings that satisfy the statute of frauds, and that the parties' course of dealing provides the legal basis for imposing the buy-back obligation on Trex.

Minnesota's Uniform Commercial Code (UCC) provides that a contract for the sale of goods for the price of $500 or more is not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought."  Minn. Stat. § 336.2-201 (2006); *Melford Olsen Honey, Inc. v. Adee*, 452 F.3d 956, 961 (8th Cir. 2006).  The primary purpose of the writing requirement in the statute of frauds is to demonstrate that a contract for sale has indeed been made. *Casazza v. Kiser*, 313 F.3d 414, 419 (8th Cir. 2002).  Whether the parties have satisfied the statute of frauds is a question of law.  *See Melford Olsen Honey*, 452 F.3d at 961-62.

There is no dispute that the price of the inventory that Drywall alleges Trex agreed to repurchase exceeds $500.  Moreover, Drywall acknowledges that it cannot point to any language in the purchase orders and invoices exchanged between the parties, or in the original distributor agreement, that requires Trex to repurchase Drywall's Trex inventory.   Drywall further admits that there are no other written agreements between Trex and Drywall that govern Trex's alleged buy-back obligation.  Under these circumstances, the Court concludes that the statute of frauds is applicable because the price of the inventory Drywall alleges Trex is required to buy back exceeds $500 and the alleged agreement requiring Trex to repurchase the inventory was not reduced to writing and signed by Trex.[1]  *See id.*

In the absence of any written agreement, Drywall's allegations of a buy-back obligation can proceed only if the alleged buy-back agreement falls under one of the three exceptions set forth in the statute of frauds.  Section 336.2-201(3) of the UCC identifies three possible exceptions to its written requirements:  (a) if the product is specially manufactured for the buyer; (b) if the party against whom enforcement is sought admits that a contract was made; or (c) with respect to goods for which payment has been made and accepted or which have been received and accepted.  *See* Minn. Stat. 336.2-201(3).

Drywall contends the third exception applies here because Trex has accepted payment from Drywall for the inventory at issue in its buy-back claims.  This, though, was nothing more than payment for goods received.  Drywall alleges the existence of an agreement between the parties that requires Trex to repurchase the inventory in Drywall's possession that Drywall

---

[1]     The Court rejects Drywall's contention that the volume of purchase orders, invoices, and credit invoices exchanged between Trex and Drywall satisfies the statute of frauds.  None of these agreements contain a buy-back requirement.  One, five, or even ten purchase agreements times zero written agreements requiring repurchase is still no written agreement.  That there is no applicable course of conduct exception is addressed *infra*.

previously purchased from Trex.  But Drywall presents no evidence that demonstrates Trex has accepted any portion of this inventory back from Drywall or that Trex has engaged in any conduct that is inconsistent with Drywall's ownership of the inventory that could be construed as acceptance.[2]  *See* Minn. Stat. § 336.2-606 (2006).  Nor does Drywall present any evidence that Trex has made payments to Drywall for the return of any part of this inventory.  The Court therefore concludes that Drywall's assertions of acceptance by Trex of payment or goods under the third exception to the statute of frauds are without merit.

The Court also rejects Drywall's contentions that the course of dealing between the parties during Drywall's eighteen months of purchases from Trex provides a basis for the Court to read a buy-back term into each individual sale of goods agreement.  First, the list of exceptions to the writing requirements of the statute of frauds applicable to the sale of goods does not include a course of conduct exception.  *See id.*; *W.H. Barber Co. v. McNamara-Vivant Contracting Co.*, 293 N.W.2d 351, 354-55 (Minn. 1979).

Second, in the context of a sales transaction governed by the UCC, evidence regarding a course of dealing is admissible to explain a term of the sales contract if the "proffered evidence is relevant to prove a meaning to which the language of the instrument is reasonably

---

[2]     Minnesota Statutes § 336.2-606 provides the following definition of acceptance of goods under the UCC:

    (1)  Acceptance of goods occurs when the buyer
        (a)    after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that the buyer will take or retain them in spite of their nonconformity; or
        (b)    fails to make an effective rejection (subsection (1) of section 336.2-- 602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
        (c)    does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by the seller.
    (2)  Acceptance of a part of any commercial unit is acceptance of that entire unit.

susceptible." *Am. Mach. & Tool Co. v. Strite-Anderson Mfg. Co*., 353 N.W.2d 592, 597 (Minn. Ct. App. 1984) (quoting *Board of Trade of San Francisco v. Swiss Credit Bank*, 597 F.2d 146, 149 (9th Cir. 1979)).  Here, Drywall has failed to identify any language in the purchase orders or invoices that suggests the parties contemplated that Trex would be required to repurchase Drywall's Trex inventory, regardless of its condition or salability, following the termination of the parties' business relationship.  Further, although Drywall presents evidence that Trex previously accepted (bought back) materials when there were defects or warranty issues, it presents no evidence linking that with an obligation to repurchase all of the Trex materials in Drywall's inventory regardless of condition or salability. [3]  Consequently, there is no term in a written agreement before the Court that could be explained by Drywall's proffered course of dealing evidence, and the Court thus concludes that the course of dealing evidence is not relevant to prove a meaning to which language of an agreement between Drywall and Trex would reasonably be susceptible.

Moreover, despite Drywall's disavowal of the applicability of the distributor agreement executed by Trex and Westmont in 2002, Drywall attached the agreement to its Complaint.  The distributor agreement does not require repurchase either.  The agreement includes a warranty provision that specifically limits Trex's obligations regarding defective items to replacement after certain conditions are met.  The agreement also addresses Trex's obligations regarding repurchase of inventory in the event the parties subsequently terminate their agreement. Paragraph 11(e) provides that Trex "*shall have the option*, within sixty (60) days after the effective termination, to purchase [Westmont's] inventory which was purchased by [Westmont] within the past twelve (12) months prior to termination." (Emphasis added.)

---

[3]      Drywall asserts that the product is not salable because it became obsolete at some point.

On the basis of the record before it, the Court concludes as a matter of law that Drywall's allegations that Trex is obligated to repurchase Trex inventory from Drywall are not sufficiently documented in writing to raise a triable issue of fact on whether the statute of frauds is satisfied. In the absence of a written agreement obligating Trex to buy back approximately $1 million of Trex inventory in Drywall's possession, the Court concludes that Trex is entitled to summary judgment on Drywall's claims asserting any such obligation. In addition, Trex is entitled to summary judgment on Drywall's claim for declaratory judgment that Trex is legally obligated to repurchase the Trex inventory in Drywall's possession. [4]

**B.      Breach of implied duty of good faith and fair dealing**

Drywall alleges a claim against Trex for breach of an implied duty of good faith and fair dealing. Drywall asserts that Trex breached this duty when Trex abruptly terminated Trex's business relationship with Drywall and then refused to buy back the Trex inventory in Drywall's possession. It is well settled that contracts governed by Minnesota law include an implied covenant of good faith and fair dealing "requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." *In re Hennepin County 1986 Recycling Bond Litig.*, 504 N.W.2d 494, 502 (Minn. 1995); *see also Minnwest Bank Cent. v. Flagship Props. LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004); *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998). However, it is also well settled that this implied duty of good

---

[4]      Because Drywall's declaratory judgment claim and Trex's counterclaim for declaratory judgment raise identical factual and legal issues regarding Trex's alleged obligation to buy back Drywall's inventory, the Court concludes that Trex's counterclaim is redundant. As such, Trex's counterclaim must be dismissed as it is rendered moot upon disposition of Drywall's declaratory judgment claim. *See Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 152 F.R.D. 580, 582 (D. Minn. 1993) (citing *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3d Cir.1975)).

faith and fair dealing does not apply to sales contracts. *See Minnwest Bank Cent.*, 689 N.W.2d at

303; *Sterling Capital Advisors*, 575 N.W.2d at 125.

Drywall fails to demonstrate the existence of a contractual agreement between Drywall

and Trex that is not a contract for the sale of goods.  Indeed, Drywall asserts that the only written

agreements between Drywall and Trex are the purchase orders, invoices, and credit invoices

related to Drywall's purchase of Trex goods and materials.  These agreements are insufficient to

demonstrate a factual issue regarding a general contractual relationship between Trex and

Drywall.  The exemplary purchase orders and invoices offered by Drywall represent separate

purchases and constitute separate contracts between Trex and Drywall for the sale of goods. *See*

*W.H. Barber*, 293 N.W.2d at 355.  As such, these agreements, as a matter of law, do not include

an implied duty of good faith and fair dealing.  In the absence of sufficient evidence of an

agreement between Trex and Drywall that is not a contract for the sale of goods, the Court

concludes that Trex is entitled to summary judgment on Drywall's claim for breach of implied

duty of good faith and fair dealing.

## C.      Motion for summary judgment is not premature

Drywall contends the instant motion for partial summary judgment is premature and that

it should be permitted to conduct discovery prior to the Court's determination on its merits.  The

Court disagrees.

Federal Rule of Civil Procedure 56 permits a motion for summary judgment by the

defendants at any time. *See* Fed. R. Civ. P. 56(b).  It is not an abuse of discretion for a district

court to grant summary judgment before the opposing party has conducted any discovery at all,

even if that party has requested a continuance pursuant to Rule 56(f), if that party does not

demonstrate how discovery will provide rebuttal to the movant's claims. *See* Fed. R. Civ. P.

56(f); *Alexander v. Pathfinder, Inc.*, 189 F.3d 735, 744 (8th Cir. 1999). Drywall admits that there are no written agreements outside of the purchase orders and invoices that govern Trex's alleged obligation to buy back Drywall's Trex inventory and has admitted that these sales contracts do not contain any express terms that could provide the basis for the imposition of a repurchase obligation on Trex. The Court thus concludes that additional discovery will not provide Drywall with a rebuttal to Trex's statute of frauds defense and Trex's summary judgment motion on Drywall's buy-back claims is timely and appropriately before the Court at this time.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    Trex Company, Inc.'s motion for partial summary judgment [Docket No. 18] is GRANTED IN PART and DENIED IN PART AS MOOT.

2.    Count V of the Complaint is DISMISSED, to the extent it is based on allegations that Trex is obligated to buy back Trex inventory in Drywall's possession.

3.    Count VI and Count VII of the Complaint are DISMISSED.

4.    Trex's motion for summary judgment on its counterclaim for declaratory judgment is DENIED AS MOOT and the counterclaim is DISMISSED.

Dated:  November 8, 2007

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge